UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE GRAY INSURANCE COMPANY

     Plaintiff,

vs.                        Case No.: _____

GROVIN FARMS, LLC, NORTH
CALEDONIA FARM, LLC, BRYCE
CUTTER ELLIOTT, CHASE HUNTER
ELLIOTT, CHERYL ANN BOSTON,
KYLE AUSTIN ELLIOTT, BROOKE
ELIZABETH ELLIOTT, and CARA ANN
ELLIOTT,

     Defendants.

_____/

## COMPLAINT

Plaintiff, The Gray Insurance Company ("Gray"), through counsel, files this Amended Complaint against Defendants, Grovin Farms, LLC ("Grovin"), North Caledonia Farm, LLC, Bryce Cutter Elliott, Chase Hunter Elliott, Cheryl Ann Boston, Kyle Austin Elliott, Brooke Elizabeth Elliott, and Cara Ann Elliott, (sometimes collectively referred to as the "Indemnitors"), and in support thereof avers as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of diverse states.

2. Gray is a Louisiana corporation with its headquarters in Louisiana. Its principal place of business is in Mandeville, Louisiana. Thus, in accordance with 28

U.S.C. § 1332(c)(1), Gray is a citizen of Louisiana. Gray is licensed to conduct business in Florida.

3.      Grovin is a Florida limited liability company that maintains its principal place of business in Melrose, Florida.   Based on public record information, its members are:

a.      Cheryl Ann Boston, a resident of and domiciled in Plant City, Hillsborough County, Florida.

b.      Bryce Cutter Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

c.      Chase Hunter Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

d.      Kyle Austin Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

4.      North Caledonia Farm, LLC, is a Florida limited liability company that maintains its principal place of business in Melrose, Florida.  Based on public record information, its members are:

a.      Cheryl Ann Boston, a resident of and domiciled in Plant City, Hillsborough County, Florida.

b.      Bryce Cutter Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

c.      Chase Hunter Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

2

d.    Kyle Austin Elliott, a resident of and domiciled in Melrose, Alachua County, Florida.

5.    Bryce Cutter Elliott is an individual of the full age of majority who is a resident of and domiciled in Melrose, Alachua County, Florida.

6.    Chase Hunter Elliott is an individual of the full age of majority who is a resident of and domiciled in Melrose, Alachua County, Florida.

7.    Cheryl Ann Boston is an individual of the full age of majority who is a resident of and domiciled in Plant City, Hillsborough County, Florida.

8.    Kyle Austin Elliott is an individual of the full age of majority who is a resident of and domiciled in Melrose, Alachua County, Florida.

9.    Brooke Elizabeth Elliott is an individual of the full age of majority who is a resident of and domiciled in Melrose, Alachua County, Florida.

10.    Cara Ann Elliott is an individual of the full age of majority who is a resident of and domiciled in Melrose, Alachua County, Florida.

11.    Venue is proper in this Court because one of the defendants is domiciled in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

12.    Gray is a surety company which, among other things, issues payment and performance bonds and stands as surety for select contractors.

13.    As part of its business, Gray issues construction performance and payment bonds and stands as surety for selected contractors on construction projects.

3

14.     In connection with its work, Grovin from time to time required surety bonds on construction projects.

15.     Before Gray would agree to issue bonds on behalf of Grovin, it required that the Indemnitors enter into an indemnity agreement with Gray.

16.     Specifically, on October 18, 2021, the Indemnitors each executed a General Indemnity Agreement ("GIA") in favor of Gray. A true and correct copy of the GIA is attached and incorporated into this Complaint as **Exhibit "A."**

17.     According to the GIA, the Indemnitors agreed, in part, to:

**2. Indemnity/Exoneration:**   The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invert or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

[GIA, § 2].

18.    The Indemnitors further agreed:

**12. Claim Settlement**. Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, regardless of whether liability exists, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to Surety for any and all Loss, costs, damages, interest and expenses, including but not limited to attorneys' fees and professionals' fees resulting from the Surety's investigation and/or defense. Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

[GIA, ¶ 12].

19.    The GIA is unequivocal and specific in setting forth the Indemnitors' obligations to "jointly, severally and/or collectively exonerate, hold harmless, and keep the Surety indemnified from and against any and all Loss..." [GIA, ¶ 2] as a result of issuing bonds or because of the Indemnitors' failure to comply with the GIA. [GIA, ¶ 1g].

20.    At the request of one or more of the Indemnitors, Gray issued a Performance Bond and Payment Bond (the "Bond") naming Grovin as Contractor as Principal, and Intercounty Engineering, Inc. ("Intercounty") as Owner (the "Bond") with a penal sum of $1,123,593.00 (the "Penal Sum") in connection with a Subcontract (the "Subcontract") between Grovin and Intercounty for certain work on Lift Station No. 5 Reconstruction, New Smyrna Beach, FL (the "Project"). Intercounty was the general contractor on the Project. A copy of the Bond is attached as **Exhibit "B"**.

21.     Disputes arose between Grovin and Intercounty on the Project, and Intercounty filed suit in the matter entitled "Intercounty Engineering, Inc. v. Grovin Farms LLC and The Gray Insurance Company" bearing Case No. 2022 10384 CIDL on the docket of the Seventh Judicial Circuit in and for Volusia County, Florida (the "Litigation") seeking damages from Grovin and Gray arising out of the Project, the Subcontract and the Bond.

22.     After trial, Judgments were entered in the Litigation in favor of Intercounty and against Grovin and Gray, jointly and severally, awarding Intercounty damages in the amount of $315,000.00, plus interest, and attorneys' fees and costs in the amount of $455,458.59, plus interest.

23.     Despite demand from Gray, the Indemnitors failed and/or refused to pay the Judgments, which were final as to Gray.

24.     Accordingly, Gray has agreed to pay Intercounty the sum of $785,736.86 (the "Satisfaction Payment") in full and final satisfaction of the Judgments (including interest).

25.     Gray further has incurred attorneys' fees and costs in connection with the Litigation and satisfying the Judgments and enforcing its rights under the GIA.

26.     To date, the Indemnitors have refused to comply with their obligations under the GIA, and Gray continues to incur attorneys' fees and costs in enforcing its rights under the GIA.

27.     Pursuant to the GIA, the Indemnitors are required to reimburse Gray for these losses.

28.    Gray has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

29.    All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## CONTRACTUAL INDEMNITY

30.    Gray realleges and incorporates paragraphs 1 through 29 as if fully set forth herein.

31.    This is an action for damages for the Indemnitors' breach of the GIA.

32.    The Indemnitors are in default of, and have breached, the GIA by, among other things, failing to exonerate, indemnify, hold harmless and keep Gray indemnified from and against any and all loss, liability, damages, and expenses of whatsoever kind or nature

33.    As a result of the Indemnitors' breaches of the GIA, Gray suffered damages in the amount of $785,736.86 and continues to incur additional damages as a result of issuing the Bond including, but not limited to, payment of the Satisfaction Payment to resolve the claim against the Bond, attorneys' fees, costs, and other expenses.

34.    Despite demand, the Indemnitors have failed to pay Gray its losses.

35.    The Indemnitors are liable to Gray for all losses sustained by reason of having issued the Bond.

36.     Gray is further entitled to an award of its attorneys' fees and costs in pursuing this claim according to the GIA, which attorneys' fees and costs continue to be incurred.

WHEREFORE, Gray demands judgment against the Indemnitors, jointly and severally, for damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and expenses, and such further relief as this Court deems just and proper.

Dated: April 6, 2026

PASKERT DIVERS THOMPSON

/s/ *Alberta L. Adams*
ALBERTA L. ADAMS
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
            lpeterson@pdtlegal.com
JOHN R. DAVENPORT, JR.
Fla. Bar. No. 1059146
Email: jdavenport@pdtlegal.com
100 North Tampa Street, Suite3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for The Gray Insurance Company*